IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| FELIX ALEX LOPEZ, | § § § | |
| Plaintiff, | § § | |
| v. | § § | NO. EP-17-CV-367-MAT |
| NANCY A. BERRYHILL, ACTING COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | § § § § § | |
| Defendant. | § § | |

## MEMORANDUM OPINION AND ORDER

This is a civil action seeking judicial review of an administrative decision pursuant to 42 U.S.C. § 405(g). Plaintiff Felix Alex Lopez ("Plaintiff") appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his applications for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act. (Pl.'s Compl., ECF No. 1, at 1). The parties consented to the transfer of the case to this Court for determination and entry of judgment. *See* 28 U.S.C. § 636(c); Local Court Rule CV-72. For the reasons set forth below, the Commissioner's decision will be **REVERSED** and the action **REMANDED**.

### I. PROCEDURAL HISTORY

Plaintiff was thirty-nine years old at the time of the decision of the Administrative Law Judge ("ALJ"), dated September 16, 2016. (R. 38, 169).[1] His past relevant work included work for the United States Department of Homeland Security as a Border Patrol Agent and a driving

---

[1] Reference to the record of administrative proceedings is designated by (R. [page number(s)]).

1

instructor. (R. 36; Hrg. Tr. 18–19).[2] On March 18, 2014, Plaintiff filed an application for a period of disability and DIB, in which he alleged disability beginning on January 21, 2014, due to back and left leg issues. (R. 169, 230). After his application was denied initially and upon reconsideration, Plaintiff requested a hearing by an ALJ. (R. 49–57, 58–68, 82–83).

On August 8, 2016, a hearing was conducted before the ALJ. (Hrg. Tr. 1). On September 16, 2016, the ALJ issued a written decision denying benefits at step five of the five-step evaluation process on the basis that Plaintiff was capable of adjusting to other work that exists in significant numbers in the national economy. (R. 36–38). On October 6, 2017, the Appeals Council denied Plaintiff's request for review, thereby making the ALJ's decision the Commissioner's final administrative decision. (R. 1–7).

In her written decision, the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease, dysfunction major joint, and obesity. (R. 29). However, the ALJ also found that these impairments or combination of impairments do not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 30). The ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform "less than a full range of sedentary work as defined in [20 C.F.R. § 404.1567(a)]." (R. 31). The ALJ assessed Plaintiff's RFC as:

> able to lift, carry, push or pull up to 5 pounds frequently and 10 pounds occasionally. He is able to sit for up to 6 hours in an 8-hour workday and stand and/or walk up to 2 hours in an 8-hour workday. He is able to occasionally climb ramps or stairs, balance or stoop but should never climb ladders, ropes or scaffolds, kneel, crouch or crawl. He can frequently reach. He will require the use of a single point cane in order to balance, stand or ambulate.

(R. 31).

---

[2] The transcript of the hearing before the ALJ was inadvertently omitted from the administrative record filed into the record in this case. It was subsequently filed at ECF No. 14. Reference to the transcript of the hearing is designated by (Hrg. Tr. [page number(s)]).

In this appeal, Plaintiff argues: (1) that his lumbar spine impairment meets the requirements of Listing 1.04(A) of the Social Security Administration Regulations (the "Regulations") and (2) that the ALJ's RFC finding is not supported by substantial evidence. (Pl.'s Br., ECF No. 20, at 6).

## II. DISCUSSION

### A. STANDARD OF REVIEW

The Court's review is limited to a determination of whether the Commissioner's final decision is supported by substantial evidence on the record as a whole, and whether the Commissioner applied the proper legal standards. *Myers v. Apfel*, 238 F.3d 617, 619 (5th Cir. 2001) (citing *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994)) (internal quotation marks omitted). Substantial evidence "is such relevant evidence as a reasonable mind might accept to support a conclusion" and is more than a scintilla, but less than a preponderance. *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995) (quoting *Greenspan*, 38 F.3d at 236; *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993)). A finding of "no substantial evidence" will be made only where there is a "conspicuous absence of credible choices" or "no contrary medical evidence." *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988) (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)) (internal quotation marks omitted).

In determining whether there is substantial evidence to support the findings of the Commissioner, the Court may not reweigh the evidence or try the issues de novo. *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000). The Court may not substitute its own judgment "even if the evidence preponderates against the [Commissioner's] decision." *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988) (citation omitted). "Conflicts in evidence are for the [Commissioner] and not the courts to resolve." *Spellman*, 1 F.3d at 360 (quoting *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990)) (internal quotation marks omitted). If the Commissioner's findings are supported by

substantial evidence, "they are conclusive and must be affirmed." *Id.* However, "[t]he ALJ's decision must stand or fall with the reasons set forth in the ALJ's decision, as adopted by the Appeals Council." *Newton*, 209 F.3d at 455.

B. THE ALJ DID NOT ERR AT STEP THREE AND HER FINDING THAT PLAINTIFF'S DEGENERATIVE DISC DISEASE IMPAIRMENT DOES NOT MEET THE REQUIREMENTS OF LISTING 1.04(A) IS SUPPORTED BY SUBSTANTIAL EVIDENCE

Plaintiff argues that his degenerative disc disease impairment meets each of the requirements of Listing 1.04(A) of 20 C.F.R. Part 404, Subpart P, Appendix 1 for disorders of the spine. (Pl.'s Br., ECF No. 20, at 7–10). Plaintiff asserts that: (1) the ALJ's finding that his impairment does not meet Listing 1.04(A) results from legal error because she does not explain her finding; (2) the ALJ's finding is not supported by substantial evidence; and (3) "the physical examinations were cursory and incomplete," and therefore, the ALJ should have ordered further review or consultation in order to fully develop the record. *Id.* at 9. In response, the Commissioner argues that Plaintiff has "failed to provide objective medical evidence showing that he met or medically equaled all of the specific criteria Listing 1.04A requires." (Comm'r's Br., ECF No. 21, at 4). The Commissioner further asserts that the ALJ did not err in finding that Plaintiff's impairment does not meet or medically equal Listing 1.04(A) because she identified the listing and discussed the evidence she considered later in her written decision. *Id.* at 6–7.

  i. *The ALJ Did Not Err in Her Explanation for Finding that Plaintiff's Impairment Does Not Meet the Criteria of Listing 1.04(A)*

Plaintiff argues that the ALJ's explanation for finding that his impairment does not meet the requirements for Listing 1.04(A) is insufficient and is, therefore, legal error. (Pl's. Br., ECF No. 20, at 9).

When determining whether a claimant is disabled under the Regulations, the ALJ conducts a "five-step sequential evaluation process." 20 C.F.R. § 404.1520(a)(4). At the third step, the ALJ

determines whether the claimant has an impairment "that meets or equals one of [the] listings in appendix 1 of this subpart and meets the duration requirement . . . ." *Id.* at § 404.1520(a)(4)(iii). If so, the claimant will be found to be disabled. *Id.*

Listing 1.04 governs disorders of the spine, resulting in compromise of a nerve root or the spinal cord. *Id.* at Part 404, Subpart P, Appendix 1, Listing 1.04. To be found disabled under this listing, the plaintiff is required to demonstrate the criteria of Listing 1.04 as well as those of one of three subsections. The subsection at issue in this appeal, Subsection A, requires "[e]vidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)." *Id.* at Part 404, Subpart P, Appendix 1, Listing 1.04(A).

In finding that Plaintiff's degenerative disc disease does not meet Listing 1.04(A), the ALJ listed each element of Subsection A without further specificity as to why Plaintiff does not meet this listing. (R. 31). Plaintiff argues that this explanation is insufficient, constituting a "bare conclusion [that] is beyond meaningful judicial review," relying on the Fifth Circuit's opinion in *Audler v. Astrue*. (Pl's. Br., ECF No. 20, at 7 (citing *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007)).

In *Audler*, the Fifth Circuit reviewed the ALJ's decision at step three where the ALJ "did not identify the listed impairment for which Audler's symptoms fail to qualify, nor did she provide any explanation as to how she reached the conclusion that Audler's symptoms are insufficiently severe to meet any listed impairment." *Audler*, 501 F.3d at 448. The Fifth Circuit found this "bare

conclusion [ ] beyond meaningful judicial review." *Id.* (quoting *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996)). The Fifth Circuit stated that, pursuant to 42 U.S.C. § 405(b)(1):

> the ALJ was required to discuss the evidence offered in support of Audler's claim for disability and to explain why she found Audler not to be disabled at that step. Although the ALJ is not always required to do an exhaustive point-by-point discussion, in this case, the ALJ offered nothing to support her conclusion at this step and because she did not, "we, as a reviewing court, simply cannot tell whether her decision is based on substantial evidence or not."

*Id.* (quoting *Cook v. Heckler*, 783 F.2d 1168, 1172 (4th Cir. 1986)).

In contrast to the ALJ's decision in *Audler*, the ALJ in the instant case specifically identified Listing 1.04(A) and stated that Plaintiff's degenerative disc disease did not meet this listing. (R. 31). The ALJ could have been more specific in explaining her decision by, for example, referring to a particular element within that subsection that was unsupported by the medical evidence. However, by identifying a specific listing, the ALJ provides more than a bare conclusion and allows for meaningful judicial review. In her subsequent discussion of the medical evidence supporting her RFC assessment, the ALJ notes findings of negative straight-leg raise tests and no motor loss, two elements specifically required by Listing 1.04(A). (R. 33–34). While not specifically incorporating her discussion of the evidence made during her RFC assessment, it is clear from that discussion and analysis that the ALJ considered and noted evidence that supports a finding that Plaintiff's impairment does not meet Listing 1.04(A). Accordingly, the Court finds that the ALJ sufficiently explained the reason for her finding that Listing 1.04(A) was not met or equaled, and, therefore, did not err. However, even if the ALJ's explanation did constitute error, as discussed *infra*, such error is harmless because her decision is supported by substantial evidence.

### ii. The ALJ's Finding Is Supported by Substantial Evidence

Plaintiff argues that the existence of each individual requirement of Listing 1.04(A) is supported by medical evidence in the record. (Pl.'s Br., ECF No. 20, at 8–9). The Commissioner, in her response, claims that Plaintiff has not shown "lack of range of motion, motor loss with accompanying reflex or sensory loss, or difficulty ambulating . . . ." (Comm'r's Br., ECF No. 21, at 5). The Commissioner also asserts that treatment records reflect an absence of positive straight-leg raising tests and neuro-anatomic distribution of pain. *Id.* at 5–6.

"The term 'disability' means [ ] inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). When determining whether a claimant is disabled at the third step of the sequential evaluation process, the ALJ determines whether the medical evidence meets or equals the criteria of a listed impairment in Appendix 1 to Subpart P of Part 404 of the Regulations and meets the duration requirement. 20 C.F.R. § 404.1520(a)(4)(iii). To meet the duration requirement, the impairment must have lasted or must be expected to last for a continuous period of at least twelve months, unless it is expected to result in death. 20 C.F.R. § 404.1509.

"A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by your statement of symptom . . . ." 20 C.F.R. § 404.1508 (1991).[3] Evidence to establish an impairment must be provided by "acceptable medical sources:" licensed physicians, licensed or certified psychologists, licensed optometrists, licensed

---

[3] Effective March 27, 2017, this regulation was removed. The ALJ's decision was issued prior to March 27, 2017. (R. 38). Accordingly, where the previous and current regulations differ, the Court considers the regulations that were in effect at the time of the ALJ's decision. *See Young v. Berryhill*, 689 F. App'x 819, 821 n.3 (5th Cir. 2017).

podiatrists, and qualified speech-language pathologists (the latter four for establishing limited impairments within the fields of their specialties). *Id.* at § 404.1513(a) (2013).[4] Other sources, such as therapists, may provide evidence tending to show the severity of an impairment. *Id.* at § 404.1513(d) (2013).[5]

The Listing of Impairments in Appendix 1 describes conditions and impairments that are sufficiently severe to prevent an individual from engaging in *any* gainful activity, not just "substantial gainful activity," regardless of age, education or work experience. 20 C.F.R. § 404.1525(a); *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990). Thus, a claimant is automatically entitled to benefits if his impairment meets the duration requirement and meets or equals the criteria of one of the listed impairments. 20 C.F.R. § 404.1520(d). Because the Listings "were designed to operate as a presumption of disability that makes further inquiry unnecessary," the medical criteria of the Listings are set at "a higher level of severity" than the statutory disability standard. *Zebley*, 493 U.S. at 532.

The Court has painstakingly reviewed the medical evidence that Plaintiff asserts supports a finding that his impairment meets Listing 1.04(A) and the durational requirement.[6] As to the

---

[4] *See* footnote 3, *supra.*

[5] *See* footnote 3, *supra.*

[6] The Court notes that Plaintiff made no specific links between his record citations and specific elements of Listing 1.04(A) but rather provided a lengthy string citation to the record, without explanatory phrases to each of the numerous record citations, at the end of a sentence that lists every requirement of Listing 1.04(A). (Pl.'s Br., ECF No. 20, at 8–9) (arguing in one sentence the existence of each element of Listing 1.04(A) followed by: "(Tr. 336-39, 340, 345, 347, 356, 357, 434-35, 465, 487, 489, 491, 492, 494, 496, 510, 512, 514-42, 553-54, 571, 573-75, 586-88, 591-98, 610, 611, 615, 640-41, 643, 670-71, 677-78, 681, 698, 700)"). The Court expects that any reference to the record, particularly multiple references, will be accompanied by a discussion or reference of the specific issue each reference is meant to support. To not do so, as in this instance, imposes an unwarranted burden on the Court in having to sift through the cited record references in order to ascertain why the party making the reference found it pertinent. The burden is particularly acute in cases such as Social Security appeals that involve voluminous and technical records. This is not the first time that this Court has been presented with citations in this manner. However, the time has come to curb the practice, and in the future, the Court will act accordingly to that end.

requirement of "motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss," the Court has found some indication of muscle weakness. On May 5, 2014, there was a finding of weakness in Plaintiff's right lower extremity, but not mention of the left lower extremity. (R. 491). There are also two letters written by Dr. Andrew Palafox, dated February 25, 2014, and March 18, 2014, that indicate that Plaintiff has weakness in the left leg. (R. 347, 356). However, these letters are during the same time period that Dr. Palafox's treatment records reflect a finding of normal muscle tone and normal muscle bulk in the left lower extremity at visits on February 24, 2014, and March 3, 2014. (R. 342, 345). Plaintiff also cites physical therapy records from February 3, 2015, to March 2, 2015, reflecting mild to moderate weakness in various abdominal, back, and hip muscles. (R. 514–542). However, as well as not being provided by an acceptable medical source, a licensed physician made findings of intact gross motor function in both lower extremities just before and after these physical therapy records on January 29, 2015, and March 19, 2015. (R. 586, 591).

Critically, however, the Court has found a lengthy record of medical evidence provided by licensed physicians with physical examination findings of normal muscle tone/bulk or normal motor function. *See* (R. 342, 345, 489) (normal muscle tone and bulk in lower left extremity without reference to other extremities and no muscle atrophy and/or normal muscle strength/tone in lumbosacral spine on February 24, 2014, March 3, 2014, and April 21, 2014); (R. 573) (motor function within normal limits in upper extremities and within normal limits in lower extremities except as to some sensory loss in left lower extremity recorded on October 9, 2014); (R. 586, 591, 596, 670–71) (motor function within normal limits in upper extremities and gross motor function intact in both lower extremities recorded on January 29, 2015, March 19, 2015, April 9, 2015, September 2, 2015); (R. 643, 701) (no muscle atrophy in lumbosacral spine, paraspinal muscle

9

strength and tone within normal limits on November 6, 2015, and January 27, 2016). Accordingly, the Court finds there is substantial evidence in the record that Plaintiff's impairment has not met the element of motor loss in Listing 1.04(A).

Furthermore, Listing 1.04(A) requires positive straight-leg raising test (sitting and supine) if there is involvement of the lower back. 20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 1.04(A). The medical evidence reflects both negative and positive results of straight-leg raising tests between February 24, 2014, and January 27, 2016, which demonstrates that this element has not been met for the durational requirement of having lasted, or being expected to last, twelve months. *See* (R. 342, 345, 489, 586, 591, 596, 671 (negative straight-leg raising tests on February 24, 2014, March 3, 2014, April 21, 2014, January 29, 2015, March 19, 2015, April 9, 2015, September 2, 2015)); (R. 496, 573, 510, 611, 701 (positive straight-leg raising tests on June 26, 2014, October 9, 2014, January 14, 2015, June 1, 2015, January 27, 2016)). Accordingly, Plaintiff has not met his burden to demonstrate that he meets this element of Listing 1.04(A).

Because the record does not show that Plaintiff has experienced the elements of motor loss or positive straight-leg raising tests as required by Listing 1.04(A) and the twelve-month duration requirement, the Court finds that the ALJ's determination that Plaintiff does not meet this listing is supported by substantial evidence.

### iii. *The ALJ Did Not Err by Not Ordering Review or Consultation to Further Develop the Record*

Plaintiff argues that the physical examinations were "cursory and incomplete," and, therefore, the ALJ had a duty to more fully develop the record either by submitting the record to a medical expert or by sending Plaintiff for a consultative examination. (Pl.'s Br., ECF No. 20, at 9). According to Plaintiff, if an ALJ does not fulfill this duty, her decision is not substantially justified. *Id.* (citing *Newton*, 209 F.3d at 458).

The Court is not persuaded by Plaintiff's arguments. Plaintiff's assignment of error in this respect is itself cursory as well as conclusory, arguing only that "on review it appears that the physical examinations were cursory and incomplete." *Id.* Plaintiff makes this argument after citing the record extensively to support his argument that the medical record reflects that he meets the requirements of Listing 1.04(A). *See id.* at 8–9. Further, the case cited in support by Plaintiff involved the ALJ's failure to obtain supplemental information when she "was faced with what she deemed an incomplete medical history" and "expressed doubts about [the treating physician's] opinions . . . but did not request additional information to eliminate those doubts before rejecting the opinion of the treating physician." *Newton*, 209 F.3d at 458. In the instant case, there is no indication from the ALJ's decision, from Plaintiff's thorough citation to the record, or from Plaintiff's general conclusion, that the medical history is incomplete nor are assessments of medical opinions made at this step of the evaluation process. To the contrary, the medical record spans more than two years with numerous instances of specific findings related to the elements of Listing 1.04(A), as detailed *supra*. Accordingly, the Court finds that the ALJ did not err by not submitting the complete medical record to a medical expert or by not sending Plaintiff for a consultative examination to make her determination at step three.

C. THE ALJ ERRED IN HER CONSIDERATION OF TREATING PHYSICIAN MEDICAL OPINIONS AND THE ERROR IS NOT HARMLESS

Plaintiff argues that the ALJ's RFC assessment is not supported by substantial evidence because the evidence of record and the opinions of Plaintiff's treating physician, Dr. Andrew Palafox, support an RFC finding that is "significantly more limited than the ALJ's finding." (Pl.'s Br., ECF No. 20, at 10–11). Plaintiff claims that the ALJ erroneously disregarded Dr. Palafox's opinion even though there was no competing first-hand medical evidence or contrary medical opinions of other physicians who have treated or examined Plaintiff. *Id.* at 19. Plaintiff asserts that

the ALJ's reasoning for disregarding Dr. Palafox's opinions was not in accord with Social Security Ruling 96-2p,[7] which provides guidance on when a medical opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques." *Id.* at 20. Plaintiff also suggests that the ALJ could have requested clarification or supplementation from Dr. Palafox. *Id.*

In response, the Commissioner claims that the RFC is an administrative assessment supported by substantial evidence, and Plaintiff has not met his burden to show that his limitations were greater than the ALJ's RFC assessment. (Comm'r's Br., ECF No. 21, at 7). The Commissioner asserts that the ALJ was justified in her assessment of Dr. Palafox's opinion, particularly because his opinions on Plaintiff's manipulative limitations (i.e. reaching, handling, fingering, and feeling) were not explained and were contradicted by other evidence. *Id.* at 8.

Between steps three and four of the sequential evaluation process, the ALJ makes a finding about the claimant's RFC "based on all the relevant medical and other evidence in [the] case record . . . ." 20 C.F.R. § 404.1520(e). The RFC is the most an individual can do in a work setting despite his physical and mental limitations related to his impairments. *Id.* at § 404.1545(a). "A limited ability to perform certain physical demands of work activity, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions, may reduce a claimant's ability to do past work and other work." *Id.* at § 404.1545(b).

When determining disability, the ALJ will consider medical opinions from acceptable medical sources, including treating physicians, together with the rest of the relevant evidence in the record. 20 C.F.R. § 404.1527(a)–(b). A treating source's medical opinion on the issue(s) of the nature and severity of a claimant's impairment(s) will be given controlling weight if the ALJ finds that it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques

---

[7] Rescinded, effective March 27, 2017, 2017 WL 3928297, but in effect at the time of the ALJ's decision. *See* footnote 3, *supra*.

and is not inconsistent with the other substantial evidence in [the] case record." *Id.* at § 404.1527(c)(2). "The judgment whether a treating source's medical opinion is well-supported and not inconsistent with the other substantial evidence in the case record requires an understanding of the clinical signs and laboratory findings and what they signify." SSR 96-2p, 1996 WL 374188.[8] Where a treating source provides opinions on several issues, "one or more of the opinions may be controlling while others may not." *Id.*

When a treating source's medical opinion is not given controlling weight, the ALJ applies the factors listed in paragraphs (c)(2)(i)–(ii) and (c)(3)–(c)(6) of § 404.1527 in determining what weight to give the opinions and provides "good reasons" for the weight given. 20 C.F.R. § 404.1527(c)(2). "[A]bsent reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist, an ALJ may reject the opinion of the treating physician *only* if the ALJ performs a detailed analysis of the treating physician's views, under the criteria set forth in 20 C.F.R. § 404.1527(d)(2)."[9] *Newton*, 209 F.3d at 453 (emphasis in original).

These factors include, *inter alia*, the length, frequency, nature, and extent of the treatment relationship, the supportability of the opinion, the consistency of the opinion with the record as a whole, and other factors, such as the medical source's understanding of disability programs and evidentiary requirements and the extent to which the medical source is familiar with the other information in the claimant's case record. *Id.* at § 404.1527(c). Still, at the administrative law judge level, the ALJ is responsible for assessing the RFC, an administrative finding that is reserved to the Commissioner and not a medical source. 20 C.F.R. § 404.1527(d).

---

[8] Social Security rulings are not binding on the Court, "but they may be consulted when the statute at issue provides little guidance." *Myers*, 238 F.3d at 620. *See also, Newton*, 209 F.3d at 458 (relying on SSR 96-2p).

[9] The criteria that the Fifth Circuit references at subsection (d)(2) in *Newton* are currently located at subsection (c)(2) of § 404.1527. *Compare* 20 C.F.R. § 404.1527 (effective to July 31, 2006) *with* 20 C.F.R. § 404.1527 (effective Aug. 24, 2012 to Mar. 26, 2017) *and* 20 C.F.R. § 404.1527 (effective Mar. 27, 2017).

13

Here, the ALJ considered opinions on Plaintiff's physical limitations from two physicians, Dr. Palafox and Dr. Shabnam Rehman, a non-examining State Agency medical consultant. (R. 35). Therefore, the only medical opinion by a treating or examining physician on Plaintiff's physical limitations considered by the ALJ was that of Dr. Palafox.

Dr. Palafox submitted a medical source statement on a standard form in which he opined on Plaintiff's exertional, postural, manipulative, visual/communicative, and environmental limitations. (R. 498–501). As to exertional limitations, Dr. Palafox opined that Plaintiff was limited to occasionally lifting ten pounds; frequently lifting ten pounds; standing and/or walking less than two hours in an eight-hour workday; and sitting less than six hours in an eight-hour workday. (R. 498–99). Dr. Palafox also opined that Plaintiff had limitations pushing and/or pulling in both the upper and lower extremities. (R. 499). Dr. Palafox stated that these limitations were due to Plaintiff's "failed surgical back syndrome[,] herniated disc[, and] lumbar radiculopathy." *Id.*

Dr. Palafox also opined that Plaintiff had postural limitations of balancing occasionally and never climbing (ramps, stairs, ladder, rope, or scaffold), kneeling, crouching, crawling, or stooping. *Id.* However, Dr. Palafox did not explain his reasons for these opinions. *Id.* As for manipulative limitations, Dr. Palafox opined that Plaintiff was limited to occasionally reaching, handling, and fingering. (R. 500). Dr. Palafox also opined, contradictorily, both that Plaintiff had no limitations in feeling but also that Plaintiff could only occasionally feel. *Id.* Again, Dr. Palafox did not provide an explanation for these limitations. *Id.* Dr. Palafox opined that Plaintiff had no visual or communicative limitations. *Id.* However, without supporting reasons, Dr. Palafox opined that Plaintiff had environmental limitations for temperature extremes, noise, dust, vibration, humidity/wetness, hazards, and fumes, odors, chemicals, and gases. (R. 501).

The ALJ gave Dr. Palafox's opinions partial weight because "[h]is limitations are not explained or clarified . . . and are contrary to other medical evidence and his own medical records." (R. 35). Specifically, as examples, the ALJ stated that Dr. Palafox did not explain or clarify "how long [Plaintiff] can stand/walk; [his] postural limitations; [and his] manipulative limitations." *Id.* The ALJ noted the contradiction of Dr. Palafox's two opinions on Plaintiff's manipulative limitation relating to feeling. *Id.* The ALJ also stated that Dr. Palafox "did not explain why all postural but balance would be 'never' or why all environmental limitations would be 'limited' or the degree of the limitation." *Id.*

The ALJ stated that she included in the RFC the limitations that Dr. Palafox opined where his opinions and the treatment records are consistent. *Id.* As an example, the ALJ stated that she did not include the manipulative limitations that Plaintiff could only occasionally handle or finger because "there is nothing in the medical evidence" to support those limitations. *Id.* In her RFC assessment, the ALJ did not include the opinions of Dr. Palafox that Plaintiff was limited to: (1) standing/walking less than two hours in an eight-hour workday; (2) sitting less than about six hours in an eight-hour workday; (3) never climbing ramps or stairs and never stooping; (4) occasionally reaching, handling, fingering, or feeling; and (5) working with the environmental limitations indicated. *See* (R. 31). It is, thus, clear that the ALJ did not give Dr. Palafox's opinions controlling weight and, in fact, rejected some of his opinions.

The ALJ, however, did not perform "a detailed analysis of the treating physician's views" applying the factors set forth in 20 C.F.R. § 404.1527(c)(2), as required when there is no "reliable medical evidence from a treating or examining physician" controverting those opinions. *Newton*, 209 F.3d at 453. The ALJ did not specifically identify any such controverting evidence in her written decision, and this Court has not found any obviously controverting evidence. Accordingly,

15

the Court finds that the ALJ erred by rejecting some of Dr. Palafox's opinions without performing the detailed analysis required by 20 C.F.R. § 404.1527(c)(2).

Remand, however, is not required unless Plaintiff can show prejudice from this error. *Newton*, 209 F.3d at 458. Plaintiff's assignment of error appears to focus solely on the exclusion of the exertional and postural limitations: standing/walking less than two hours in an eight-hour workday, sitting less than six hours in an eight-hour workday, never climbing ramps or stairs, and never stooping. *See* (Pl.'s Br., ECF No. 20, at 21) (referencing vocational expert's testimony that an individual would not be able to perform any work in the national economy if these limitations were added to the RFC). Accordingly, the Court focuses on these limitations.

Based on the ALJ's written reasoning, the Court infers that the ALJ determined that the treatment records do not support a finding that Plaintiff is limited to standing/walking less than two hours, and sitting less than about six hours, in an eight-hour workday and that Plaintiff can never climb ramps or stairs and can never stoop. Both Plaintiff, in his brief, and the ALJ, in her written decision, extensively cite medical evidence provided by four physicians and spanning three years, demonstrating Plaintiff's several back procedures, back scans, and diagnoses, including lumbar spinal stenosis, lumbar radiculopathy, bulging discs, and chronic pain syndrome. (Pl.'s' Br., ECF No. 20, at 10–19; R. 32–34). Moreover, the medical evidence reflects consistent findings of a limited range of motion in Plaintiff's back. *See* (R. 336, 337, 338, 339, 345, 489, 494, 496, 510, 586, 591, 596, 610, 611, 615, 670); *but see* (R. 643, 701). The Court has not found any obvious differences of diagnoses or grossly variant findings on physical examination by Plaintiff's treating physicians.[10]

---

[10] The Court also finds it curious, without explanation by the ALJ, that the RFC includes a limitation that Plaintiff requires the use of a single point cane in order to balance, stand or ambulate but that he can occasionally climb stairs and stoop. *See* (R. 31).

Accordingly, had the ALJ performed a detailed analysis under 20 C.F.R. § 404.1527(c)(2) or requested clarification from Dr. Palafox, the Court finds it possible she would have afforded more weight to Dr. Palafox's opinions, which may have resulted in a more limited RFC. Furthermore, in finding Plaintiff not disabled at step five, the ALJ relied on the vocational expert's testimony that jobs exist in the national economy that could be performed by an individual with Plaintiff's age, education, work experience, and RFC. (R. 37). Accordingly, if the RFC were more limited, then the ALJ's disability determination would not be based on substantial evidence. Therefore, such error is not harmless, and this action must be remanded for further administrative proceedings.

The Court also notes that the ALJ found that Dr. Palafox failed to explain or clarify his opinions. (R. 35). On remand, the Court urges the Commissioner to seek clarification from Dr. Palafox regarding his opinions or to consult a medical expert to help clarify the limitations indicated by the medical evidence, if she believes it would assist in the consideration of Plaintiff's claims.

### III. CONCLUSION

**IT IS ORDERED** that the decision of the Commissioner will be **REVERSED** and the action **REMANDED** pursuant to the fourth sentence of 42 U.S.C. § 405(g) for further administrative proceedings.

**SIGNED** and **ENTERED** this 29th day of March, 2019.

MIGUEL A. TORRES
UNITED STATES MAGISTRATE JUDGE